VILLANTI, Judge.
 

 The State appeals the trial court’s order granting Ian James Legnosky’s motion to suppress, which resulted in the dismissal of all charges against him. We reverse.
 

 The facts are essentially undisputed. On December 16, 2008, Deputy Mark Darst was attempting to serve a March-man Act
 
 [1]
 
 court order on Shannon Coteral.
 
 *796
 
 Upon receiving information that Coteral was in Legnosky’s apartment, Deputy Darst visited the apartment. An individual who identified himself as Jason Gonzalez answered the door. Upon being told the reason for Deputy Darst’s visit, Gonzalez indicated that Coteral was not in the apartment and invited the deputy into the apartment to look around. Gonzalez indicated that a woman had been in the apartment earlier. Thereafter, Legnosky came out from a bedroom. Recognizing Legno-sky as Coteral’s boyfriend, Deputy Darst told him that he was looking for Coteral. Legnosky responded, “She’s not here, she’s already been served. She’s been taken to a rehab. I haven’t seen her in several days.” However, because Gonzalez had indicated that a woman had been in the apartment earlier, Deputy Darst did not believe Legnosky’s statements and checked the bedroom from which Legno-sky had just come. The deputy found Coteral hiding in the closet of that bedroom and arrested Legnosky for “lying” to him — obstructing him without violence based upon “lies” which hindered his investigation and ability to take Coteral for evaluation. Coteral intervened, acknowledging, “Please don’t [arrest Legnosky], he was just trying to protect me.” Upon Legnosky’s arrest, the police found in his pocket Oxycodone, Oxycontin or its equivalent, as well as Xanax.
 

 Legnosky was charged with two counts of possession of a controlled substance and one count of obstructing or opposing an officer without violence. At the hearing on the motion to suppress, Legnosky argued that words alone, unaccompanied by any physical conduct preventing the officer from searching — i.e., merely lying about Coteral’s whereabouts when he knew she was hiding in the closet — could not constitute obstruction as a matter of law. The trial court agreed and granted Legnosky’s motion to suppress, reasoning that Legno-sky’s “lies” did not ultimately hinder the police officer because he still searched and found Coteral almost immediately despite Legnosky’s “lies.” We disagree with the trial court’s conclusion that this scenario could not constitute obstruction without violence as a matter of law.
 

 Appellate review of a ruling on a motion to suppress is a mixed question of law and fact.
 
 State v. Busciglio,
 
 976 So.2d 15, 18 (Fla. 2d DCA 2008). The appellate court will presume that the trial court’s findings of fact are correct and will reverse those findings only if they are not supported by competent, substantial evidence.
 
 Cuervo v. State,
 
 967 So.2d 155, 160 (Fla.2007). However, application of the law to the historical facts is reviewed de novo.
 
 Id.
 

 There is no evidence that Legnosky engaged in any physical conduct impeding the deputy’s duties. The issue here is whether Legnosky’s false statements to Deputy Darst that Coteral was not in the apartment, that he had not seen her in days, and that she had already been served and had been taken to a rehab center constituted obstruction sufficient to support arrest. Section 843.02, Florida Statutes (2008), provides:
 

 Resisting officer without violence to his or her person. — Whoever shall resist, obstruct, or oppose any officer ... in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree....
 

 Thus, to establish a charge of resisting an officer without violence, the State must prove that: (1) the police officer was en
 
 *797
 
 gaged in the execution of legal process or execution of a legal duty, and (2) the defendant’s actions constituted obstruction or resistance.
 
 Id.; Francis v. State,
 
 736 So.2d 97, 98 (Fla. 4th DCA 1999). It is undisputed that Deputy Darst was serving legal process. Therefore, the only question is whether Legnosky’s actions rose to the level of obstruction or resistance. We conclude they did.
 

 Typically, physical conduct must accompany words to support a charge of obstruction. In
 
 D.G. v. State,
 
 661 So.2d 75, 76 (Fla. 2d DCA 1995), while concluding that the defendant’s words alone in that particular case did not constitute obstruction, this court explained the following “general proposition” applicable to section 843.02:
 

 If a police officer is
 
 not engaged in executing process
 
 on a person, is
 
 not legally detaining that person,
 
 or
 
 has not asked the person for assistance with an ongoing emergency that presents a serious threat of imminent harm to person or property,
 
 the person’s words alone can rarely, if ever, rise to the level of an obstruction. Thus, obstructive conduct rather than offensive words are normally required to support a conviction under this statute.
 

 Id.
 
 (emphasis added). As noted in
 
 D.G.,
 
 this court has identified three scenarios under which words alone are sufficient to obstruct a police officer. One of those scenarios is when an officer is attempting to serve process.
 
 Francis,
 
 736 So.2d 97, 99 n. 2 (Fla. 4th DCA 1999) (“Words alone may result in obstruction of justice where the officer in question is 1)
 
 serving process;
 
 2) legally detaining a person; or 3) asking for assistance.” (emphasis added));
 
 Jay v. State,
 
 731 So.2d 774, 775 (Fla. 4th DCA 1999) (“[T]he court provides three legal duties, when coupled with words alone, which will result in obstruction of justice, (1) serving process; (2) legally detaining a person; or (3) asking for assistance.”);
 
 Davis v. Williams,
 
 451 F.3d 759, 765 n. 9 (11th Cir.2006) (interpreting Florida law and stating that words alone can result in obstruction of justice where an officer is serving process, legally detaining a person, or asking for assistance). Here, Deputy Darst was attempting to execute process.
 

 Courts have also found a defendant’s words alone sufficient to support obstruction charges when that defendant has been working as a “lookout” during the commission of a criminal act. For example, obstruction charges have been upheld when an officer observes a crime and tries to make an arrest, but a “lookout’s” words warn the suspect that the police are coming, thereby preventing a possible suspect’s apprehension.
 
 See, e.g., Porter v. State,
 
 582 So.2d 41, 42 (Fla. 4th DCA 1991) (holding that defendant could be charged with obstruction under section 843.02 where he acted as “lookout” for drug deal and warned drug dealer that the police were coming by yelling code words, thereby allowing drug dealer to escape). In such circumstances, the defendant's words are intended to interfere with and impede police officers in the execution of their legal duties.
 
 Id.
 
 at 41, 43. Similarly, words alone support obstruction charges when the defendant gives a police officer a false name during his arrest, because that act hinders the officer’s performance of his arrest duties.
 
 See, e.g., Caines v. State,
 
 500 So.2d 728, 729 (Fla. 2d DCA 1987). The focus, thus, should be on whether the defendant’s false statements were
 
 intended
 
 to hinder the police officer in the exercise of his duties, not on whether the defendant’s ruse achieved its intended result. It is enough that Legnosky’s “lies” thwarted the officer’s ability to immediately execute process and take Coteral in for evaluation without engaging in a potentially
 
 *798
 
 dangerous search. To hold otherwise would punish a defendant only if the police officer actually believes a defendant’s “lies,” while exonerating or rewarding a defendant if the police officer does not believe his “lies.” This result would be illogical.
 

 Moreover, the supreme court recently noted that “to support a conviction for obstruction without violence, the State must prove ... [that] the defendant’s action,
 
 by his words,
 
 conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty.”
 
 C.E.L. v. State,
 
 24 So.3d 1181, 1186 (Fla.2009) (emphasis added). Therefore, the supreme court has indicated that there are circumstances when words alone are sufficient to support an obstruction charge. This is one such circumstance. As in the cases cited above, Legnosky’s words were intended to hinder, prevent, or obstruct Deputy Darst’s legal duties of serving process and taking Coteral into custody for substance evaluation. Legnosky’s words were not “mere verbal expression challenging police action,” but rather, on their face, were “intended to impede the officer [ ] in the execution of [his] duties.”
 
 Porter,
 
 582 So.2d at 43. Based on these facts, words alone were sufficient to charge Leg-nosky with a violation of section 843.02, and the trial court erred in granting the motion to suppress.
 

 Reversed and remanded.
 

 LaROSE, J., and FULMER, CAROLYN K., Senior Judge, Concur.
 

 [1]
 

 . A Marchman Act order allows an officer to take a person into custody for involuntary
 
 *796
 
 drag or alcohol assessment.
 
 See
 
 § 397.6811, Fla. Stat. (2008).