[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 10, 2010
JOHN LEY
CLERK

No. 09-15349
Non-Argument Calendar

_____

D. C. Docket No. 08-60979-CV-PAS

WILLIAM MANSEAU,
KATHLEEN M. MANSEAU,

Plaintiffs-Appellants,

versus

CITY OF MIRAMAR AND CODE
COMPLIANCE DIVISION,
CITY OF MIRAMAR POLICE
DEPARTMENT,
MIRAMAR BUILDING DEPARTMENT,
and/or Zoning Department,
Occupational License Division,
Office of the City Manager of
the City of Miramar,
CITY OF MIRAMAR,
a municipal entity,
VIVIAN ACEVEDO,
33174 in her official and
individual capacity, et al.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

(September 10, 2010)

Before EDMONDSON, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

William and Kathleen Manseau, proceeding pro se, appeal the dismissal of

their amended civil rights complaint, 42 U.S.C. § 1983, for failure to state a claim.[1]

No reversible error has been shown; we affirm.

Plaintiffs filed their complaint against the City of Miramar, Florida ("City"),

officials and officers in the City's Code Compliance Division, City police officers,

a special magistrate for the City, and the City's attorney. Their complaint stemmed

from code citations issued to Plaintiffs for operating, in violation of City

ordinances, a commercial roofing business out of their residence. Plaintiffs raised

a lot of constitutional claims about the issuance of the citations, including that

Defendants' acts prevented them from practicing their religion, invaded their

privacy, denied them due process, and discriminated against them. The district

—————————

[1]We review de novo the district court's grant of a Fed.R.Civ.P. 12(b)(6) motion to
dismiss for failure to state a claim. Clark v. Riley, 595 F.3d 1258, 1264 (11th Cir. 2010).

court granted Defendants' motion to dismiss,[2] concluding that (1) Plaintiffs' allegations stated no constitutional violation so the individual defendants were entitled to qualified immunity and that (2) the City, in issuing the citations and levying the fines, was not operating under a policy or custom to violate Plaintiffs' constitutional rights.[3]

On appeal, Plaintiffs ask us, in consideration of their pro se status, to determine which of their constitutional rights have been violated. While pro se pleadings are entitled to liberal construction, we cannot serve as Plaintiffs' de facto counsel and "rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998). Plaintiffs themselves must provide the grounds that entitle them to relief. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

On the merits, Plaintiffs argue that the district court erred in concluding that Defendants violated none of their constitutional rights and maintain that they stated

_____

[2]We note that -- in the background section of its order dismissing Plaintiffs' amended complaint -- the district court included facts from the parties' statements of undisputed facts on summary judgment to increase coherence where Plaintiffs' complaint was unclear. But the district court based its Rule 12(b)(6) dismissal solely on the Plaintiffs' pleading; so, the court was not required to convert Defendants' Rule 12(b)(6) motion to a summary judgment motion. See Fed.R.Civ.P. 12(d) .

[3]The district court also concluded that the magistrate was entitled to absolute judicial immunity and that Plaintiffs stated no equal protection claim against the City attorney. On appeal, Plaintiffs do not challenge these conclusions; and they have abandoned any challenges to them. See Irwin v. Hawk, 40 F.3d 347, 347 n.1 (11th Cir. 1994).

3

claims for First Amendment free exercise, Fourth Amendment unlawful search, due process, and equal protection violations. They also maintain that they demonstrated that the City failed to train its employees and operated under a custom or policy to violate their constitutional rights.[4]

We address Plaintiffs' arguments about the district court's qualified immunity conclusion. To show entitlement to qualified immunity, "the defendant government official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994) (internal quotations omitted). That the government Defendants here were acting within their discretionary authority as officers and agents of the City is undisputed. So, Plaintiffs bore the burden of showing that (1) the facts, as alleged and viewed in the light most favorable to them, established a constitutional violation and -- if so, (2) the constitutional right violated clearly was established. Id. at 1565.

Plaintiffs claimed that the citations and fines issued to them made them unable to practice their religion, which was funded by their roofing business. A neutral and generally applicable law does not violate the Free Exercise Clause of

---

[4]To the extent Plaintiffs argue that the City breached an alleged express contract that it had with them, we decline to address the claim because the district court declined to exercise supplemental jurisdiction over state law claims. And the court was permitted to do so. See 28 U.S.C. § 1367(c)(3).

the First Amendment, even if the law has an incidental effect on religious practices. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 113 S.Ct. 2217, 2226 (1993). Here, Plaintiffs' allegations failed to show how the City's laws underlying the requirements about businesses were not neutral and generally applicable or how they affected religion in any way. That Plaintiffs allegedly could not practice their religion because of the fines levied against them was an incidental effect and did not constitute a violation of the Free Exercise Clause.

Plaintiffs also argued that Defendants violated their Fourth Amendment rights against unreasonable searches by searching, without a warrant, their home and property for code violations. Plaintiffs based this claim on the citations they received for certain vehicles and their lack of an occupational license. But no unreasonable search occurred of the vehicles located in the Plaintiffs' driveway. See California v. Ciraolo, 106 S.Ct. 1809, 1812 (1986) (explaining that the "Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares"). Plaintiffs noted that they took measures to prevent people from seeing into their yard by erecting a six-foot fence. But code officers violated no Fourth Amendment right by looking over the fence, especially given that Plaintiffs did not allege that the officers were looking from a vantage point where they did

not have the right to be. See id. (explaining that the mere fact that a person "has taken measures to restrict some views of his activities" does not preclude "an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible").

About procedural due process, Plaintiffs alleged that the magistrate imposed fines based solely on the code inspector's affidavit without allowing them an opportunity to be heard. "Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). Here, four separate hearings were conducted about Plaintiffs' code violations; and Plaintiffs attended the first of these hearings. That they did not attend the other hearings or that their requested continuances were not granted does not indicate a denial of due process. Plaintiffs also had the opportunity to appeal the final administrative decisions, but they chose not to do so. See Fla. Stat. Ann. § 162.11. We conclude that Plaintiffs' allegations show that they were afforded constitutionally-adequate process. See McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) ("only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise").

Plaintiffs alleged that Defendants violated their equal protection rights by

6

citing their vehicles for code violations when similarly-situated vehicles were located on their street. They also alleged that Defendants targeted Plaintiffs for discriminatory treatment. To state an equal protection violation, a plaintiff must show that they were treated differently from similarly situated people and that defendants unequally applied a facially neutral ordinance for the purpose of discriminating against plaintiffs. See Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006).

Here, Plaintiffs failed to explain how other vehicles on their street were similarly situated to theirs and did not state whether the owners of these vehicles also were operating a business without a license. Plaintiffs' speculative and vague allegations that similar vehicles were not given citations and of discriminatory animus cannot state an equal protection violation. "Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were similarly situated to plaintiff." See GRJ Invs., Inc., 132 F.3d at 1367-68.

Plaintiffs stated no denial of a constitutional right. The absence of a constitutional violation by the individual Defendants makes it unnecessary for us to consider whether the City was subject to municipal liability for failure to train its

7

employees or because of a custom or policy. See Garczynski v. Bradshaw, 573 F.3d 1158, 1171 (11th Cir. 2009) (if no constitutional violation has occurred, we need not consider whether the municipality's training of its employees violated plaintiffs' constitutional rights); Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred).

AFFIRMED.